PARRO, J.
|zThe plaintiff, Alberto Mejia, appeals the judgment of the trial court granting motions for summary judgment in favor of the defendants, Boykin Brothers, Inc. (Boykin), Burlington Insurance Company (Burlington), and Travelers Property Casualty Company of America (Travelers), finding that Mr. Mejia was the borrowed employee of Boykin, and dismissing Mr. Mejia’s suit against the defendants. For *83 the reasons that follow, we affirm the judgment of the trial court.
FACTUAL AND PROCEDURAL BACKGROUND
Boykin was a contractor on a job in which it had a contract with Boh Bros. Construction Co., LLC (Boh Bros.), a general contractor, to construct concrete pilings and girders/beams. In order to complete this job, Boykin needed additional workers skilled in concrete work to assist it in this task. Therefore, Boykin contracted with E. Perez Services, Inc. (E. Perez), which is located in Channelview, Texas, to send workers to Boykin’s facility in Baton Rouge where the work was to be performed. Boykin entered into a written agreement with E. Perez in which E. Perez agreed to provide workers specializing in concrete-products work to Boykin, along with ail the safety equipment the workers would need to perform their duties. The agreement further provided that Boykin would be responsible for wiring the payroll funds for the workers into E. Perez’s account by 2 p.m. on the Monday following each work week. Also pursuant to the agreement, E. Perez was to name Boykin as an additional insured on its workers’ compensation and general liability insurance policies.
One of the workers provided to Boykin pursuant to this arrangement was Mr. Mejia, who was allegedly injured at the Boy-kin jobsite while he was cleaning out a large metal mold, into which concrete is poured to form pilings, girders, and beams that are used when building highways, bridges, or overpasses. Allegedly, the mold was not properly secured to the stand upon which it was supported, or the stand was not strong enough to support the mold, and it fell on Mr. Mejia’s left hip, crushing his left hip and leg.
^Thereafter, Mr. Mejia filed this tort suit against Boykin, seeking damages for the injuries he sustained as the result of this accident. Boykin answered the suit and asserted various affirmative defenses, including the defense that Mr. Mejia was either the statutory or borrowed employee of Boykin at the time the injury occurred. Mr. Mejia subsequently filed a supplemental and amending petition naming Burlington and Travelers as defendants.[1]
Eventually, Boykin and Burlington filed a motion for summary judgment, contending that Boykin was the borrowing employer of Mr. Mejia at the time of the accident and that Mr. Mejia was limited to workers’ compensation as his sole remedy in this matter. Travelers also filed its own motion for summary judgment raising the same argument.[2]
After a hearing, the trial court granted the motions for summary judgment, finding that Mr. Mejia was a borrowed em *84 ployee of Boykin. Thereafter, Mr. Mejia filed this devolutive appeal.
SUMMARY JUDGMENT
An appellate court’s review of a summary judgment is a de novo review based on the evidence presented to the trial court, using the same criteria used by the trial court in deciding whether a summary judgment should be granted. Buck’s Run Enterprises, Inc. v. Mapp Const., 99-3054 (La.App. 1st Cir.2/16/01), 808 So.2d 428, 431. A motion for summary judgment should be granted only if all the pleadings, depositions, answers to interrogatories, admissions, and any affidavits submitted to the trial court show that there is no genuine issue of material fact and that the mover identified to judgment as a matter of law. LSA-C.C.P. art. 966(B). If the issue before the court on the motion for summary judgment is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing that there is no genuine issue of material fact is on the party bringing the motion. See LSA-C.C.P. art. 966(C)(2).
DISCUSSION
Louisiana Revised Statute 23:1031(C) provides:
In the case of any employee for whose injury or death payments are due and who is, at the time of the injury, employed by a borrowing employer in this Section referred to as a “special employer”, and is under the control and direction of the special employer in the performance of the work, both the special employer and the immediate employer, referred to in this Section as a “general employer”, shall be liable jointly and in solido to pay benefits as provided under this Chapter. As between the special and general employers, each shall have the right to seek contribution from the other for any payments made on behalf of the employee unless there is a contract between them expressing a different method of sharing the liability. Where compensation is claimed from, or proceedings are taken against, the special employer, then, in the application of this Chapter, reference to the special employer shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the general employer by whom he is immediately employed. The special and the general employers shall be entitled to the exclusive remedy protections provided in R.S. 23:1032.
Pursuant to LSA-R.S. 23:1031(C), a “borrowing” or special employer can be held liable for compensation benefits where the employee is under the control and direction of the borrowing employer in the performance of the work. In a workers’ compensation case, the issue of whether a borrowed employee relationship exists is a matter of law for the court to determine. Gardiner v. St. Tammany Parish Sheriff’s Department, 04-0345 (La.App. 1st Cir.12/30/04), 898 So.2d 470, 473, writ denied, 05-0914 (La.5/20/05), 902 So.2d 1054. While there is no fixed test, the factors to be considered in determining the existence of a borrowed employee relationship include: right of control; selection of employees; payment of wages; power of dismissal; relinquishment of control by the general employer; which employer’s work was being performed at the time in question; the existence of an agreement, either implied or explicit, between the borrowing and lending employer; furnishing of instructions and place for the |performance of the work; the length of employment; and the employee’s acquiescence in a new work situation. Barrios v. *85 Lambar, 06-0324 (La.App. 1st Cir.12/28/06), 951 So.2d 323, 327.
The evidence in the record indicates that Mr. Mejia was a direct or general employee of E. Perez. However, E. Perez had sent Mr. Mejia and various other workers from Houston, Texas, where E. Perez was based, to the Boykin facility in Baton Rouge, Louisiana. Mr. Mejia and the other workers were sent to Boykin’s facility pursuant to the written contract between E. Perez and Boykin, which provided for E. Perez to supply Boykin with the necessary employees that specialized in concrete-products work. The contract further provided how much the E. Perez employees would be paid for their labor, that Boykin had to be given 90-days notice before pay rate increases were put into effect, and that Boykin and E. Perez had to mutually agree to any pay rate increases.
One of the employees E. Perez sent to the Boykin facility was Jose Gallegos, who testified by deposition that he was the foreman in charge of all the E. Perez workers at the facility at the time of the accident. However, he acknowledged that when they were at the Boykin facility, a Boykin employee named Robert Walters was his supervisor. He further testified that Mr. Walters would give him the assignment for the day, and then he would pass on those instructions in Spanish to the E. Perez employees, all of whom spoke little or no English. Mr. Gallegos also testified that Mr. Walters was in charge of the E. Perez employees, and Mr. Walters would stay around while they were working to instruct them and to monitor their performance.
According to his deposition, Mr. Gallegos further acknowledged that E. Perez was basically a temporary employment company. This testimony was confirmed by the deposition of Gabriel Perez, who at one time was the owner of E. Perez, when he testified that the company was only in the business of providing workers to other companies. Mr. Perez and Mr. Gallegos both testified that E. Perez paid the workers out of its own account; however, the funds used for paying the workers came from Boykin, | (¡which wired the funds into E. Perez’s account after a Boykin employee had verified and calculated the hours worked by each E. Perez employee.[3]
The evidence in the record also demonstrates that Boykin had the right to fire any E. Perez employee working on that project. Boykin also had the right to request that E. Perez send additional employees to the jobsite if it wanted additional employees to work on the project. In addition, Boykin provided all the equipment and tools necessary for the E. Perez employees to work on the project, except for the safety equipment, which E. Perez was to provide. The job was carried out at Boykin’s facility in Baton Rouge, and at the time of the accident, Mr. Mejia was doing work that Boykin was obligated to perform for Boh Bros. Moreover, Mr. Mejia was performing concrete work, which was apparently Boykin’s customary and usual business.
Based on the evidence presented in connection with the motions for summary judgment, and after a thorough de novo review of the record, we find that Mr. Mejia was a borrowed employee of Boykin.
*86 DECREE
Given his status as a borrowed employee, Alberto Mejia is barred from suing Boykin Brothers in tort under the provisions of the Louisiana Workers’ Compensation Act. See LSA-R.S. 23:1031(0) and 1032. The trial court properly granted the motion for summary judgment and dismissed the suit against Boykin Brothers, Burlington Insurance Company, and Travelers Property Casualty Company of America. The judgment of the trial court is affirmed, with all costs of this appeal assessed against Alberto Mejia.
AFFIRMED.

. The original petition had simply named XYZ insurance company as a defendant; however, Mr. Mejia apparently learned the names of the insurance companies providing insurance to Boykin and amended the petition appropriately. In addition to Burlington and Travelers (which was improperly named as Travelers Property & Casualty Insurance Company of America in the supplemental and amended petition), Mr. Mejia named as defendants two other insurance companies, Alea London Limited and The Society and Corporation of Lloyd’s (improperly named as Underwriters at Lloyds, London in the supplemental and amended petition). However, both of these insurance companies were dismissed, without prejudice, when they produced evidence that they had not issued any policy to Boykin covering the accident at issue at the time the accident took place.

. These three defendants had previously filed motions for summary judgment contending that Boykin was the statutory employer of Mr. Mejia at the time of the accident. The trial court denied those motions, and that issue is not before this court at this time.

. Mr. Perez testified that, at some point, Boy-kin had trouble getting the funds into the account in time to pay the workers, so E. Perez paid them out of its own funds. However, the general practice was that Boykin would wire the funds for the payment of the E. Perez workers into the E. Perez account so that the workers could be paid.