HIGGINBOTHAM, J.
f3In this consolidated action concerning personal injuries that arose out of a three-vehicle collision, the defendants appeal a final judgment rendered in accordance with a jury verdict in favor of the plaintiff. The appeal challenges the percentages of fault allocated by the jury, two evidentiary rulings made by the trial court, and two aspects of the damages awarded by the jury. •
*768 FACTS AND PROCEDURAL HISTORY
The motor vehicle accident at issue occurred early in the morning, while still dark, on March 17, 2011, at approximately .6:00 a.m., on U.S. Highway 190 East (Hwy.190) near Gremillion Road in West Baton Rouge Parish. Harry Bridges, was driving an eighteen-wheeler tractor-trailer logging truck that was owned by his employer, N & G Trucking, Inc., and he was hauling a full load of timber logs for Hin-son Logging, Inc. The accident occurred after Mr. Bridges exited the parking lot of the Cajun Circus truck stop where the truck had been parked overnight. Mr. Bridges planned to head east on Hwy. 190 and in order to do so, he pulled across the two westbound lanes of Hwy. 190 after checking for traffic coming from both directions and seeing that “nothing [was] coming.” Ignoring a “Do Not Enter” sign and lights “way down the road” in the eastbound lanes, Mr. Bridges madé an illegal left-hand turn across a gravel crossover area in the median to get to the eastbound left-hand lane of Hwy. 190.
At the same time, two vehicles were traveling on the eastbound side óf Hwy. 190, approaching the'same crossover area. Each vehicle was in the left-hand lane with cruise controls set at roughly 60-65 miles per hour in the 65 mile per hour speed zone. There were approximately two-to-three car lengths between the first vehicle, driven by Mary Alford, and the second vehicle, driven by Paul Schexnayder. When Mr. Schexnayder saw the logging truck entering the eastbound lane, he slammed on |4his brakes and veered into the right lane. At the same time that Mr. Schexnayder changed lanes, Ms. Alford’s vehicle impacted the right rear wheel on the tractor portion of the eighteen-wheeler truck. After hitting the truck, Ms. Alford lost .‘control of her vehicle, which began to spin directly into the path of Mr. Schex-. nayder’s vehicle in the right eastbound lane. The Schexnayder and Alford vehicles collided and slid off of the paved roadway onto the grassy south shoulder area of Hwy. 190, approximately 230 feet past the crossover. Both Mr. Schexnayder and Ms. Alford were injured as a result of the collision.' Mr. Bridges was cited for driving the wrong way: to the crossover area; he pled guilty and paid a fine.
Subsequently, Mr. Schexnayder and his wife, Sybil Schexnayder, filed suit-against Mr. Bridges, his employer, N & G Trucking, Inc., , Hinson Logging, Inc., and their insurer, State National Insurance Company, Inc., (collectively referred to as “the defendants”).[1] The Schexnayders alleged that Mr. Bridges negligently caused the accident by failing to yield and/or making an illegal left turn into the path Of an oncoming vehicle, among other things. Mr. Schexnayder'alleged that he sustained neck and back injuries in the accident. As a result of his injuries, Mr. Schexnayder underwent two back surgeries, and he alleges he will most likely need a third back surgery in his future. Ms. Schexnayder alleged that she had suffered a loss of consortium as a result of her husband’s injuries.
Ms. Alford also filed suit against the defendants in a separate action, alleging that she had sustained injuries in the accident due to Mr. Bridges’ and N & G Trucking’s negligence. The defendants answered both lawsuits, denying any negligence and specifically alleging that Ms. Alford and Mr. Schexnayder were at fault *769 for the accident because of their.failure to be attentive so as to avoid thej^accident. The two lawsuits were consolidated by- the trial court; however, due to a settlement between Ms. Alford and the defendants, by the time the matter proceeded to- a jury trial, the only remaining claims were those of Mr. Schexnayder against the defendants.[2] : •
Following a five-day trial, the jury returned a verdict, assessing 65% fault for the accident to Mr. Bridges and 35% fault to Ms. Alford. The jury also rendered the following damage award in favor of Mr. Schexnayder and against the defendants:
Past Medical Expenses $ 222,639.92
Future Medical Expenses $ 247,000.00
Past Lost Wages/Loss of Earning Capacity $ ,s 62,300,00
Future Lost Wages/Loss of Earning Capacity $ 360,000.00
Past Physical Pain and Suffering $ 100,000.00
Future Physical Pain and Suf- . fering $ 100,000.00
Past Mental Anguish $ 50,000.00
Future. Mental Anguish $ 50,000.00
Past Loss of Enjoyment of Life $ 100,000.00
Future Loss of Enjoyment' of Life • $ ■ 200,000,00
Total $1,481,939.92
The trial court signed a final judgment in accordance with the jury verdict on July 21, 2014. The defendants filed a motion for new trial, which was subsequently denied by the trial court on November 10, 2014. The defendants then- filed a motion for suspensive appeal, which was granted on November-17, 2014. In their appeal, the defendants assign the following errors: (1) the trial court erred in not allowing the defendants to- attack the credibility of Dr. Mark McDonnell; (2) the jury erred in awarding $247,000.00 in future medical expenses; (3) the trial court erred in allowing. Neil Guidry to be called as a rebuttal witness; (4) thé jury erred in awarding | (¡$350,000.00 in future lost wages; and (5) the jury erred in finding Mr. Bridges 65% at fault.
LAW AND ANALYSIS
Trial Court Rulings-Assignments of Error # 1 and # 3

Motion in Limine

- In their first assignment of error, the defendants contend that they should have been afforded an opportunity to attack the credibility of Mr. Schexnayder’s treating orthopedic spine surgeon, Dr. Mark F. McDonnell, with alleged impeachment evidence consisting of complaints filed against Dr. McDonnell in Texas, almost ten years earlier.[3] Dr. McDonnell was thé only physician to testify at trial regarding the necessity of Mr. Schexnay-der’s past and future back surgeries.[4] Pri- *770 or to trial, Mr. Schexnayder filed a motion in limine requesting an order from the trial court that prohibited the defendants from introducing any evidence, or in any way disclosing to the jury, any alleged facts or circumstances surrounding the disposition of administrative proceedings that occurred in 2005-2006 between the Texas Board of- Medical Examiners and Dr: McDonnell, which ultimately led Dr. McDonnell to allow Ms Texas medical .license to expire. The defendants opposed the motion, maintaining the information was critical to assessing Dr. McDonnell’s credibility.
The motion was argued at trial, out of the presence of the jury, after which the trial court granted the motion, thereby excluding any evidence or reference to the Texas proceedings as irrelevant and highly prejudicial. The trial court, however, did not prohibit the defendants from asking I)r. McDonnell if he still had a license in | ./Texas and whether he was eligible to reapply for the license. The defendants argue on appeal that the trial court erred in excluding the evidence of the Texas administrative proceedings, which they maintain is critical information that the jury should have heard in order to properly assess Dr, McDonnell’s credibility. The defendants request that this court conduct a de novo review based upon the trial court’s alleged error, or alternatively, remand for a new trial since the defendants were prevented from attacking the -credibility of Dr. McDonnell.
Initially, we note that the trial court has great'discretion when considering-evidentiary matters, such as motions in limine. Heller v. Nobel Insurance Group, 2000-0261 (La.2/2/00), 758 So.2d 841, 841; Maldonado v. Kiewit Louisiana Co., 2012-1868 (La.App. 1st Cir.5/30/14), 152 So.3d 909, 922, unit denied, .2014-2246 (La.1/16/15), 157 So.3d 1129. Evidence that is not relevant is not admissible.- See La.Code Evid. art.> 402. Whether evidence is relevant is within the discretion of the trial court, and its ruling will not be disturbed on appeal in the absence of a clear abuse of discretion. Hunter v. State ex rel. LSU Medical School, 2005-0311 (La. App. 1st Cir.3/29/06), 934 So.2d 760, 763, unit denied, 2006-0937 (La.11/3/06), 940 So.2d 653. Indeed, a trial court has much discretion to regulate the evidence a jury hears. Beaucoudray v. Walsh, 2007-0818 (La.App. 4th Cir.3/12/09), 9 So.3d 916, 928, writ denied, 2009-0832 (La.5/29/09), 9 So.3d 168. Moreover, a trial court should consider the improper inferences a jury might make from evidence of a physician’s personal history and of a medical licensing board’s reports and/or investigations when balancing the probative value of evidence with the danger of its unfair prejudice. Id., 9 So.3d at 929.
We also observe that relevant-evidence may be excluded’ if, among other things, its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. La.Code Evid. art. 403. See also La.Code Evid. art. 607(D)(2). The party alleging prejudice by the evidentiary ruling of the trial court bears the burden of so proving. Mapp Construction, LLC v. Southgate Penthouses, LLC, 2009-0850 (La.App. 1st Cir.10/23/09), 29 So.3d 548, 561, writ denied, 2009-2743 (La.2/26/10), 28 So.3d 275; On appeal, the reviewing court is required to consider whether the particular ruling complained of was erroneous and if so, whether the error prejudiced the complaining party’s cause. Rush v. Rusk, 2012-176 (La.App. 3d Cir.6/6/12), 102 So.3d 193, 201. If a substantial right was not prejudiced or affected by the evi- *771 dentiary ruling, a reversal is not warranted. Thus, we must determine whether the alleged erroneous evidentiary ruling, when compared to the record in its totality, ,had a substantial effect on the outcome of, the case to the defendants’ detriment. See Politz v. Politz, 49,242 (La.App.2d Cir.9/10/14), 149 So.3d 805, 818-19.
After reviewing the entire record, we fail to see how any alleged evidence of unrelated administrative proceedings concerning Dr. McDonnell’s medical practice a decade ago in another state and involving other patients has any probative value regarding Dr.- McDonnell’s surgical treatment of Mr. Schexnayder in this particular case. See Tramontin v. Glass, 95-744 (La. App. 5th Cir.1/30/96), 668 So.2d 1252, 1256-57. We note that the defendants did not object to Dr. McDonnell’s qualifications when he was tendered and accepted by the trial court as an expert in orthopedic spine surgery. The defendants did not attack Dr. McDonnell’s expert credentials, background, or experience in any way. However, the evidentiary issue was preserved for appellate review due to the trial court’s consideration of Mr. Schexnayder’s motion in limine. See Maldonado, „152 So.3d at 923-24.
Our examination of the record reveals no evidence that Dr. McDonnell’s treatment of Mr. Schexnayder was anything other than legitimate or that Dr,. McDonnell performed or recommended unnecessary or questionable medical [9treatment for Mr. Schexnayder. We recognize that the defendants simply .intend to use the unrelated -Texas administrative proceedings to attack the credibility - of Dr. McDonnell’s treatment of - Mr. Schexnay-der in this particular case. However, the fact that allegations were made against Dr. McDonnell in Texas, along with the fact that he agreed to allow his Texas medical license to lapse, do not constitute proof of professional misconduct, or of negligence in this' ease. We conclude, that the trial court did not abuse its discretion in finding that the probative Value, if any, :of evidence of the unrelated- administrative proceedings filed- against Dr. McDonnell in Texas was substantially outweighed by the danger of unfair prejudice.[5]' Thus, we reject the defendants’ argument concerning Dr. McDonnell’s credibility, and we find no error in the trial court’s ruling that the evidence was inadmissible.

Rebuttal Witness

In their third assignment of error, the defendants maintain that the. trial court erred in allowing Mr. Schexnayder’s former supervisor, Thomas Neil Guidry, Jr., to be called as a rebuttal witness after the defendants had presented their casein-chief and rented. The defendants argue that Mr. Guidry’s testimony did not rebut any of their evidence and should have been advanced in Mr. Schexnayder’s case-in-chief.
*772 Rebuttal evidence is generally confined to new matters adduced by the defense and not to repetition of a plaintiffs ■theory , of the case;. however, admission of rebuttal evidence is within the trial court’s discretion. See Roberts v. Owens-Corning Fiberglas Corp., 2003-0248 (La. App. 1st Cir.4/2/04),, 878 So.2d 631, 646, writ denied, 2004-1834 (La.12/17/04), 888 So.2d 863; Bordelon v. Drake, 578 So.2d 1174, 1178 (La.App. 5th Cir.1991). The record reveals that' Mr. Schexnayder’s counsel attempted to call Mr. Guidry to the witness stand early in the trial- during the plaintiffs case-in-chief, but was met with the defendants’ objection that Mr. ■Guidry was not declared a witness before the cutoff date:on the pretrial order. In response, Mr, Schexnayder’s counsel explained to the. trial court that Mr. Guidry was not initially identified as Mr. Sche^-nayder’s direct supervisor until a deposition of his employer’s representative, Mr. Alan M. Blundell, which was taken after the discovery cutoff date at the request of the defendants’ counsel. After listening to argument on the issue, the trial court ruled that the defendants would not be prejudiced by allowing Mr, Guidry, as the direct supervisor of Mr. Schexnayder, to testify about why Mr. Schexnayder was released from his employment. The trial court further ruled that, in the interest of justice, Mr. Guidry could be taken out of order as a rebuttal witness in response to Mr. Blundell’s deposition testimony after it was presented.
We discern no injustice resulting from ■the trial court’s ruling on Mr. Guidry’s testimony. The trial court is vested with great discretion in controlling the conduct of trial and the presentation of evidence. See La.Code Civ, P. arts. 1631 and 1632. This includes the power to admit rebuttal evidence and the order of presentation of witnesses, as well as the admissibility of a witness’s -testimony, whether that witness is brought in rebuttal or one that was not properly listed on the pretrial order. See La.Code Civ. P. art. 1551(B).[6] See also Pennison v. Carrol, 2014-1098 (La.App. 1st Cir.4/24/15), 167 So.3d 1065, 1075, writ denied, 2015-1214 (La.9/25/15), 178 So.3d 568; Combs v. Hartford Ins. Co., 544 So.2d 583, 586 (La.App. 1st Cir.), writ denied, 550 So.2d 630 (La.1989); Lea v. Baumann Surgical Supplies, Inc., 321 So.2d 844, 856 (La.App. 1st Cir.1975). writs denied, 325 So.2d 279 (La.1976). It is only upon a showing of a gross abuse of discretion that appellate' courts have intervened. Pino v. Gauthier, 633 So.2d 638, 648 (La.App. 1st Cir.1993), units denied, 94-0243 and 94-0260 (La.3/18/94), 634 So.2d 858 and 859.
‘ The trial court thoroughly Considered the timing ‘ of Mr. Guidry’s testimony, which was offered at two different points during the trial and in direct response to information that the jury heard in the reading of deposition testimony of Mr. Schexnayder’s employer during Mr. Schex-nayder’s' case-in-chief. Additionally, we note that Mr. Guidry’s testimony was not a surprise and it was principally cumulative, since it merely reiterated a point previously made by Mr. Schexnayder when he testified that he had been terminated from his employment in January 2014 after informing Mr. Guidry that he could no longer work due to his back pain. Under the circumstances, the defendants have, failed to show -prejudice on this basis, and we *773 find no abuse of discretion in the trial court’s ruling.
Jury Finding — Assignment of Error #5

Allocation of Fault

In their fifth assignment of error, the defendants suggest that the juiy . committed manifest error in allocating Mr. Brooks 65% of the fault for causing, the accident. The defendants contend that the physical evidence supports a finding that Ms. Alford was 100% at fault, because it. was undisputed that the logging truck driven by Mr. Brooks was fully in the left-hand eastbound lane of Hwy. 190 when' Ms.' Alford failed to maintain control of her car and/or move safely around, the truck into the right-hand eastbound lane., Alternatively, the defendants argue that if Ms. LaAlford is not allocated 100% of the fault, her percentage of fault should be significantly increased from 35%.
More than one party may be at fault for the damages sustained in a motor vehicle accident. This is premised in Louisiana’s comparative negligence scheme articulated in La. Civ.Code art. 2323. Fontenot v. Patterson Ins., 2009-0669 (La.10/20/09), 23 So.3d 259, 267. In deciding which parties are. responsible,, a duty-risk analysis is used, wherein the plaintiff must prove that: (1) the conduct in question was the eause-in-fact of the -resulting harm; (2) the defendants owed a duty to the plaintiff, which the defendants breached; and (3) the risk of harm was within the scope of protection afforded by the duty breached. Id. The allocation of fault between comparatively negligent parties is a finding of fact. Sims v. State Farm Auto. Ins. Co., 98-1613 (La.3/2/99), 731 So.2d 197, 199. In apportioning fault, the fact finder shall consider both the nature of the conduct of each party at fault and -the extent of the causal relationship between the conduct and the damages claimed. Gibson v. State Through Dept. of Transp. and Development, 95-1418 (La.App, 1st Cir.4/4/96), 674 So.2d 996, 1005, units denied, 96-1862, 96-1895, 96-1902 (La.10/25/96), 681 So.2d 373-74. (citing Campbell v. Louisiana Dept. of Transp. and Development, 94-1052 (La,l/17/95), 648 So.2d 898, 902). In assessing the nature of the conduct of the parties, various factors, may influence the degree of fault assigned by the fact finder, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor,.whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, -without proper thought. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985).
| 1aIt is well settled that the allocation of fault is a factual matter within the sound discretion of the fact finder, and appellate courts review a fact finder’s apportionment ‘ of fault under the manifest error-clearly' wrong standard of review. See Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607, 610; Great West Cas. Co. v. State ex rel. Dept. of Transp. and Development, 2006-1776 (La.App. 1st Cir.3/28/07), 960 So.2d 973, 977-78, writ denied, 2007-1227 (La.9/14/07), 963 So.2d 1005. The manifest error standard démands great deference to the fact finder’s conclusions; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear1 so heavily on the listener’s understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous. Id. If an appellate court finds a clearly wrong allocation of fault,- it should *774 adjust the award, but then only to the" extent of lowering or raising it to the highest or lowest point respectively that is reasonably within the fact finder’s discretion. Clement, 666 So.2d at 611.
The jury found that both Mr. Bridges and Ms. Alford were comparatively negligent in causing Mr. Schexnayder’s injuries, and that an assessment'of some degree of fault to each of them, specifically 65% for Mr. Bridges and 35% for Ms. Alford, wás appropriate. Our only inquiry at this stage is whether the jury’s factual findings were reasonable, regardless as to how we may have weighed the evidence sitting as the' trier of fact. Fontenot, 23 So.3d at 273. We are also aware that the allocation of fault is not an exact science, or the search for one precise ratio, but rather an acceptable range, and any allocation by the fact finder within that range cannot be clearly wrong. Id., 23 So.3d at 274.
In this, case, there was conflicting evidence presented to the jury as to whether. Mr. Bridges had completed his left turn into the left-hand eastbound lane of Hwy. | u190 or whether he was still in the process of turning/merging at the time that Ms. Alford hit the truck. There was also conflicting evidence as to the speed Mr. Bridges was traveling (anywhere from 10 to 35 mph) when Ms. Alford’s vehicle hit the truck. Nevertheless, Mr. Bridges readily admitted that he made an illegal left-hand turn onto Hwy. 190 after entering the crossover area going in the wrong direction. Mr. Bridges also acknowledged that it was still dark at the time of the accident, but he saw. lights “way down the road” that were approaching the crossover area in the lefthand eastbound lane of Hwy. 190, and they were “coming up fast.”
Mr. Schexnayder testified that he saw the headlight beams of Ms. Alford’s vehicle approaching the merging logging truck driven by Mr; Bridges. Mr. Schexnayder stated that he applied his brakes as hard as\ he could and immediately switched lanes, but there was nothing he could do to avoid Ms. Alford’s vehicle that spun into his path in the right-hand lane. Mr. Schexnayder- believed the impact occurred less than a second after he saw the truck, and he felt that Ms. Alford could not have avoided the impact. He stated that although he reacted to seeing the logging truck, and safely moved from the left-hand lane to the right-hand lane, he did not see Ms. Alford attempt to move to the right-hand lane before she'hit'the truck.
Ms. Alford admitted that she was wearing a surgical 'shod on her right foot at the time of the' accident, but she claimed that the shoe did not affect her ability to drive. Additionally, the jury heard from Ms. Alford’s physician who had prescribed the surgical shoe, Dr. Máxime G.J. Savard. Dr. Savard testified that from a medical standpoint, Ms. Alford, who was five weeks post-operative from bunion surgery, would have been restricted from driving at the time of the accident, and that she would have been instructed not to drive with the surgical shoe.
The jury' weighed the conflicting evidence ¡of the eyewitnesses, as well as the differing views of the investigating Louisiana State Police officer, Trooper James |, ¿Cannon, and the accident reconstruction expert offered by the defendants, Dr. Steven Werner. The trooper testified that his investigation on the morning of the accident led him to conclude that the point of impact was at the crossover area where the truck was merging. Conversely, the accident reconstructionist testified that the physical evidence of debris in the roadway (depicted in photographs taken at the scene after the accident) revealed that the point of impact was over 300 feet down the road from the crossover, and the truck had *775 already completely merged into the left-hand eastbound lane of Hwy. 190. Dr. Werner opined that since Mr. Schexnayder was able -to see the truck and change lanes, Ms. Alford should have seen it and had time to move as well. Howeyer, Trooper Cannon stated that the drivers of the two vehicles probably could not haye seen the truck’s lights as it entered the . crossover area.
Having thoroughly 'reviewed the conflicting testimony concerning the accident, and mindful of the great deference we must-afford the jury as fact finder, we cannot say the jury’s allocation of fault was manifestly erroneous"'dr clearly wrong. Considering the record in its. entirety, we are satisfied that it reasonably supports the jury’s conclusion that Mr. Bridges was 65% at fault and Ms. .Alford was 35% at fault in causing this accident. Neither Mr. Bridges nor Ms. Alford saw what they should have seen, • and Mr. Bridges admitted that immediately preceding the accident he made an illegal left-hand turn. Thus, we find no error in the assessment- of the majority of the fault to Mr. Bridges whose conduct created a great risk, especially considering the .diminished visibility at the time of the accident.[7], This assignment of error is without merit.
11fiJury Damage Awards — Assignments of Error # 2 and # 4
In Guillory v. Lee, 2009-0075 (La.6/26/09), 16 So.3d 1104, 1116, the Louisiana Supreme Court reiterated' well-settled law that a jury is given great discretion in its assessment of the appropriate amount for damages. Further, the jury’s assessment of damages is a factual determination that is entitled to great deference on review. Id. Because the discretion vested in the trier of fact is so great, and even vast, an appellate court'should rarely disturb a damage award on review. Id., 12 So.3d at 1117. The only damage awards at issue in this case are for two items of special damages: future medical expenses and fiiture lost wages or loss of earning capacity.- We-will examine each of these awards separately. ■

Future Medical Expenses

In their second assignment of error, the defendants argue that the jury’s award of $247,000.00' for future ■ medicál expenses is excessive and not supported by the record. At the time of trial,' Mr. Schexnayder had already undergone two back surgeries as a result of 'his injuries sustained in this accident. ■ Mr.' Schexnay-der’s. treating orthopedic spine surgeon, Dr. McDonnell, was the-only physician to testify regarding Mr. Schexnayder’s probable need for a third back surgery in the future. Dr. McDonnell related all of Mr. Schexnayder’s back and leg pain symptoms and surgeries to the March 17, 2011 accident, confirming that, it was “more probable than not.”
There was no contradictory evidence offered to refute Dr. McDonnell’s medical opinion on causation. Dr. McDonnell testified that the level above where Mr. Schex-nayder underwent a back fusion (at L5-S1) in 2014, would eventually deteriorate over time. Dr. McDonnell stated that the deterioration would cause ⅛ collapse of the disc space at L4-5, which would “more likely than not” require another spinal fusion surgery 'in five-to-ten years. Dr. McDon *776 nell unequivocally 117related the-need for the future surgery, which was “pretty much guaranteed,” to the accident. Dr. McDonnell also testified about the postoperative needs related to Mr. Schexnay-der’s future surgery, including an electric bone - stimulator device, pain -medication, and physical therapy. In addition to those post-operative needs, Dr. McDonnell testified about the need for periodic office visits, x-rays, CT scans, and MRIs to monitor Mr. Schexnayder’s condition. Dr. McDonnell stated that he usually turns patients over to pain management doctors after they achieve maximum medical improvement' anywhere from twelve-to:eighteen months after fusion surgery.
Additionally, Dr. 'McDonnell testifíéd that Mr. Sehexnayder’s past spinal fusion surgery cost a total of $140,000.00, and he stated that the future surgery would involve a similar expense. Dr. McDonnell further testified about.the.cost of postoperative care with an electric bone stimulator at $5,000.00, physical therapy at $1,500.00, CT . scans and MRIs at $370.00 to $500.00 each, plus pain management doctor visits every three months at $670.00 per visit, and spinal injections that would cost anywhere from $2,000.00 to $3,000.00 per injection. Dr. McDonnell stated that Mr. Schexnayder’s back condition would require pain management for the rest of his life. At the time of trial, Mr. Schex-nayder was 57 years old, with a life expectancy of approximately 80 years. Dr, McDonnell’s testimony regarding costs was not countered, in that the defendants did not offer any conflicting expert testimony as to the cause of Mr. Schexnayder’s injuries or the need and costs for his future medical care, relying instead only on their cross-examination of Mr. Schexnay-der and Dr. McDonnell.
Although the jury’s, award for future medical expenses was not itemized with particularity, the jury obviously accepted Dr. McDonnell’s testimony describing Mr. Schexnayder’s “guaranteed” need for future surgery and treatment, as well as Dr. McDonnell’s cost estimates, when it awarded a lump sum for future medical 11Rexpenses in the amount of $247,000.00. In order to recover future medical expenses, the appellate record must establish that the expenses will be necessary and inevitable. Levy v. Bayou Indus. Maintenance Services, Inc., 2003-0037 (La.App. 1st Cir.9/26/03), 855 So.2d 968, 975, writs denied, 2003-3161 and 2003-3200 (La.2/6/04), 865 So.2d 724 and 727. An award of future-medical expenses will not be supported in the absence of medical testimony that they are indicated and setting out their probable cost. Id. However, a reviewing court should not reject an award of future medical expenses on the basis that the record does not provide the exact value of the necessary expenses, unless it is determined from the evidence of past medical expenses and other evidence a minimum amount that reasonable minds could not disagree will be required. Hollenbeck v. Oceaneering Intern., Inc., 96-0377 (La.App. 1st Cir.11/8/96), 685 So.2d 163, 178, writ denied, 97-0493 (La.4/4/97), 692 So.2d 421.
After reviewing the record herein, we find that there was sufficient evidence and testimony to support the jury’s determination that Mr. Schexnayder would require future back surgery and would incur future medical expenses related to the injuries he suffered in the March 17, 2011 accident. Considering Dr. McDonnell’s outlined cost estimates that were not contested, we find that the jury’s award of $247,000.00 for future medical expenses is amply supported by the record and does not constitute an abuse of discretion. This assignment of error is without merit.
*777 Future Lost Wages/Loss of Earning Capacity ■
In the defendants’ fourth assignment of error, they contend that the jury erred in awarding $350,000.00 to Mr. Schexnayder for future lost wages or loss of earning capacity. The' defendants argue that the award should be reversed’ because there was no evidence that Mr. Schexnay-der could not return to work. It is well established that awards for loss of earning-capacity are speculative by nature and cannot be | ^calculated with mathematical certainty. Therefore, the fact finder necessarily must have much discretion in fixing the future lost wages award. Nielsen v. Northbank Towing, Inc., 99-1118 (La.App. 1st Cir.7/13/00), 768 So.2d 145, 163, unit denied, 2000-2423 (La.11/3/00), 773 So.2d 149.
Mr. Schexnayder testified that up until the accident, he has always been in good health and he worked in the pipe and steel fabrication industry. At the time'- of the accident, Mr. Schexnayder was working as a shop superintendent at Lawdan Industries. ' That was the highest paid po'sition of his career, at approximately $103,453.00 per year. Mr. Schexnayder worked at Lawdan until July 2013, only missing two weeks of work after his first back surgery in September 2Ó11, and for his various doctor appointments. However, Mr. Schexnayder lost his job at Lawdan. due to complaints that he was treating co-workers unprofessionally, which was out of character for him. Mr. Schexnayder testified that he was experiencing mood swings and was short-tempered because of the extreme pain he began experiencing again in 2013. Because he was not ready to undergo the back fusion (second) surgery recommended by Dr. McDonnell, and he wanted to continue to work,' Mr. Schexnayder found another-job as a pipefitter-at Repcon after he was terminated' from Lawdan. He worked at Repcon, earning $28 per hour, from October 2013 until January 2014, when he was terminated because he could no longer perform the heavy duty work of a pipefitter due to his back and radiating leg pain.
Mr. Schexnayder .underwent the recommended spinal fusion surgery on -May 12, 2014. He has not worked since he was terminated from- Repcon in January 2014. At the time of trial in June 2014, Mr. Schexnayder was' still recovering from the fusion surgery. He testified that he did not believe he could ever work again in the fabrication industry, and- he was told by Dr. McDonnell that he could not work at all for at least another year while he healed. Even" after he -is completely healed from |20the second surgery, Mr. Schexnayder has' been informed by Dr. McDonnell that he will only be able to perform sedentary jobs. Mr. Schexnayder stated that "even though he would like to work in a fabrication shop or plant again, he knows there are no sedentary jobs in the fabrication industry. •
Dr. McDonnell testified that Mr. Schex-nayder has always been concerned about his ability to return to work, stating that Mr. Schexnayder continuously wanted to return to work, which he was able to do after thé first surgery. However, Dr. McDonnell opined that when Mr. Schex-nayder heals from the second surgery in twelve-to-eighteen months, he will never again be able to do a job that requires heavy lifting. He will be confined to sedentary work. Dr. McDonnell further testified that Mr.- Schexnayder will be limited ■to lifting nothing more than ten pounds, with no pushing, pulling, climbing, crawling or sitting for prolonged periods of time. He further stated that Mr. Schex-nayder is 100% disabled from ever being a pipefitter again and he probably could not perform his former'supervisor position be *778 cause it is not sedentary, in that it requires standing for .long hours. None of the testimony offered by Mr. Schexnayder or Dr. McDonnell, was countered by the defendants'.
The factors to be considered in determining loss of future income include the plaintiffs physical condition before and after his injury; his age and life expectancy, prior and- after the accident; his previous earnings; his work record; the amount the plaintiff probably-would have earned absent the injury; and the probability he would have' continued to earn wages over the balance of his working life. Matos v. Clarendon National Insurance Company, 2000-2814 (La.App. 1st Cir.2/15/02), 808 So.2d 841, 850. In computing loss of future income, it is necessary to determine whether and .for how long a plaintiffs disability will prevent him from engaging in work of the same or similar kind that he was doing at the time of his injury. Id. Additionally, in order to obtain an award for impaired earning capacity, a plaintiff |g1must present medical evidence that at least indicates there could be a residual disability causally related to the accident. Bize v. Boyer, 408 So.2d 1309, 1311-12 (La.1982). In order to recover damages for loss of earning capacity, the plaintiff need not be working or even in a certain profession to recover. What is being compensated is his lost ability to earn such an amount, and he may recover such damages even though he may never have taken advantage of that capacity. Matos, 808 So.2d at 850.
The evidence in the record reveals that before the accident, Mr. Schexnayder was- a strong, healthy 57-year-old man who had been consistently working in the labor-intensive fabrication industry for over 35 years, earning at his high point approximately $103,000.00 per.., year. While at the time of the accident, ■-Mr. Schexnayder was working as a shop superintendent, supervising other employees, and he was not required to do any heavy lifting, he was on his feet for long hours, which he can no longer, tolerate. Jobs in the fabrication industry, even after he fully recovers from his .probable third surgery in the future, are no longer an option for Mr. Schexnayder because of his disabling back condition. Given Mr, Schexnayder’s age, his past earnings and consistent work history, along with the uncontradicted testimony regarding his physical limitations, we are unable to find that the jury abused its discretion in awarding Mr. Schexnayder $350,000.00 for future lost wages. Thus, we reject the defendants’ contention that the award should be set aside as excessive and unwarranted. This assignment of error lacks merit.
CONCLUSIÓN
For the foregoing reasons, we affirm in all respects the July 21, 2014 final judgment of the trial court that was rendered in accordance with the jury’s verdict. The defendants are cast with all costs of these consolidated appeals.
AFFIRMED.

. The Schexnayders also named their iinin-süred/underinsured motorist carrier, State Farm Mutual Fire and Casualty Company, as a defendant. However, the Schexnayders later dismissed State Farm from the suit.

.While Ms. Schexnayder was named as a plaintiff along with her husband, she is not mentioned in the judgment that was rendered in accordance with the jury verdict and signed by the trial court. The record does not reflect an abandonment or dismissal of Ms. Schexnayder’s consortium claim, but no party has raised any error concerning Ms. Schex-nayder’s claim on appeal. Generally, when a judgment is silent as to a claim or demand before the court, the relief is deemed to have been rejected or denied. See Barham & Arceneaux v. Kozak, 2002-2325 (La.App. 1st Cir.3/12/04), 874 So.2d 228, 241, writ denied. 2004-0930 (La.6/4/04), 876 So.2d 87. Therefore, we presume Ms. Schexnayder’s consortium claim was denied, and the issue is not before us in this appeal.

. , At times throughout the record, Dr. McDonnell is mistakenly identified as Dr. Mark McDonald. However, the medical records for Mr. Schexnayder clearly reflect that his treating orthopedic, sürgeon is Dr. Mark F. McDonnell. •

. Mr. Schexnayder’s family doctor, Dr. Stacey Lane Mayeaux, testified generally about Mr. Schexnayder’s medical history and injuries related to the March 17, 2011, accident, but *770 he deferred to Dr. McDonnell regarding Mr. Schexnayder’s need for surgery.

. We distinguish the Second Circuit case, Pratt v. Culpepper, 49,627 (La.App.2d Cir.2/27/15), 162 So.3d 616, 619-20, where impeachment evidence concerning the plaintiffs treating chiropractor, and the fact that the chiropractor's license was suspended for Medicaid billing fraud and overtreatment of patients, was deemed relevant to an issue in the case about the degree of care and cost of treatment rendered to the plaintiff, ,The plaintiff's counsel, after strenuously objecting to the evidence, actually “opened the door” by proceeding to present the evidence to the jury. The defendants were then entitled to cross-examine the chiropractor. The court of appeal, after noting, that plaintiff’s counsel could no longer object to the evidence, nevertheless found no error in the admission of the evidence. ’ In the case sub judice, there is absolutely no evidence in the record that the treatment of Mr. Schexnayder was in any way questionable or substandard. This is an important distinction making the evidence of unrelated administrative proceedings irrelevant and unduly prejudicial. '

. A pretrial order "controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice.” La.Code Civ. P. art. 1551(B). The theory inherent in pretrial procedure is the avoidance of surprise and the allowance of the orderly disposition of the case. Vernon v. Wade Correctional Institute, 26,053 (La.App.2d Cir.8/19/94), 642 So.2d 684, 688..

. It is undisputed that Mr. Bridges had a valid commercial driver's license and had never been involved in any other accident. The jurisprudence recognizes that commercial truck drivers, such as Mr. Bridges are superior actors in the eyes of the law, and with their superior knowledge and training, they are held to a high standard of care to the motoring public. See Davis v. Witt, 2002-3102 (La.7/2/03), 851 So.2d 1119, 1128-29.