NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 1292
and
2019 CW 0014

KENDALL VOSBURG

VERSUS

THE CITY OF NEW ROADS AND ABC INSURANCE COMPANY

Decision Rendered: **MAY 1 1 2020**

* * * * * * *

APPEALED FROM THE
18th JUDICIAL DISTRICT COURT,
POINTE COUPEE PARISH, LOUISIANA
DOCKET NUMBER 47,296, DIVISION D

HONORABLE ELIZABETH A. ENGOLIO, JUDGE

* * * * * * *

| | |
|---|---|
| Mark E. Hanna | Attorneys for Defendant/Appellant |
| Trevor M. Cutaiar | City of New Roads |
| New Orleans, Louisiana | |
| and | |
| Willie G. Johnson Jr. | |
| Sophia Riley | |
| Derek E. Elsey | |
| Baton Rouge, Louisiana | |
| and | |
| Chad Aguillard | |
| New Roads, Louisiana | |
| | |
| Donald J. Cazayoux Jr. | Attorneys for Plaintiff/Appellee |
| J. Lane Ewing Jr. | Kendall Vosburg |
| Baton Rouge, Louisiana | |

BEFORE:  McDONALD, THERIOT, and CHUTZ, JJ.

**McDONALD, J.**

The City of New Roads appeals a judgment against it for tort damages in favor of a former Pointe Coupee Parish Police Jury employee, who was injured in a work-related accident. The City also filed a writ application challenging the district court's denial of summary judgment on the issue of a borrowing employer/employee relationship and denial of the City's motion for jury trial. We affirm the judgment and deny the writ.

### FACTUAL AND PROCEDURAL BACKGROUND

Kendall Vosburg was employed as the Building Maintenance Supervisor for the Pointe Coupee Parish Police Jury (Police Jury). Mr. Vosburg also had a side air conditioning business, which he engaged in outside of his Policy Jury employment. On September 25, 2015, Mr. Vosburg met with City of New Roads (City) employees at the Scott Civic Center in New Roads to change elevated light fixtures at the tennis courts. The Police Jury was responsible for maintaining the tennis courts, and the men were using a City-owned bucket truck to change the light fixtures. As Mr. Vosburg entered the truck's bucket, his left knee was punctured by a drill bit stored in a pouch on the inside of the bucket.

Mr. Vosburg was treated at a local emergency room on the day of the accident, and then Dr. Michael Frierson, an orthopedist, treated him conservatively for several months. Although he continued to work, Mr. Vosburg's knee problems persisted. Eventually, on September 6, 2016, Dr. Frierson performed an arthroscopic procedure to repair a medial meniscus tear of Mr. Vosburg's left knee. After the surgery, Dr. Frierson restricted Mr. Vosburg to no work for several months. During that time, the Police Jury's workers' compensation insurer paid Mr. Vosburg benefits.

Dr. Frierson released Mr. Vosburg to begin light-duty work on February 3, 2017. The Police Jury then implemented a "Transitional Duty Policy" designed to give employees productive work during recovery from on-the-job injury or illness with the ultimate goal of returning to their regular work duties. Under the Transitional Duty Policy, the Police Jury temporarily transferred Mr. Vosburg to an administrative assistant position at a reduced salary, effective April 1, 2017. The Police Jury informed Mr.

2

Vosburg that he would remain in the temporary, light-duty position until his doctor released him to full duty, or until October 1, 2017, the expiration date of the temporary position. In early June 2017, however, the Police Jury fired Mr. Vosburg for "harassing, abusive[,] and disorderly conduct towards coworkers." Since then, Mr. Vosburg has continued his air conditioning business with assistance from family members.

Earlier, in September 2016, Mr. Vosburg had filed a tort suit against the City[1] for damages related to his knee injury. The City filed an exception of no cause of action and a motion for summary judgment, claiming Mr. Vosburg was the City's borrowed employee, which limited his recovery to workers' compensation benefits. After a hearing, the district court signed a judgment in December 2018, denying the City's exception and motion. The City filed a writ application in this Court, challenging the district court's judgment. Later, this Court referred the writ to this panel for decision. *Kendall Vosburg v. The City of New Roads et al.*, 2019 CW 0014 (La. App. 1 Cir. 8/19/19) (unpub'd writ action).

Ultimately, Mr. Vosburg's suit against the City proceeded to a bench trial. On May 23, 2019, the district court signed a judgment finding the City liable to Mr. Vosburg for a total of $972,642.46, including: $300,000 in general damages; $42,306.46 in past medical expenses; $50,000 in future medical expenses; $47,493 in past lost wages; $372,401 in future lost wages; and $160,442 in additional losses. The City filed a motion for new trial, which the district court denied; the City then filed this appeal.

On appeal, the City contends the district court erred in failing to find the City was Mr. Vosburg's borrowing/special employer; in awarding Mr. Vosburg future lost wages; and, in failing to assign comparative fault to Mr. Vosburg for his accident.

## BORROWING EMPLOYER/EMPLOYEE RELATIONSHIP

The City first contends the district court erred in failing to find that the City was Mr. Vosburg's borrowing employer, thus precluding Mr. Vosburg's tort suit and limiting him to workers' compensation remedies.

---

[1] Mr. Vosburg also named ABC Insurance Company as a defendant. In its answer, the City stated that it was a self-insured entity.

Under the Louisiana Workers' Compensation Act (LWCA), an employer is liable for compensation benefits to an employee who is injured as a result of an accident arising out of and in the course of employment. La. R.S. 23:1031A. Generally, the LWCA's rights and remedies provide an employee's exclusive remedy against an employer for such injury. La. R.S. 23:1032. These statutory protections apply to both a "general" or "immediate" employer/employee relationship, as well as to a "special" or "borrowing" employer/employee relationship. *See* La. R.S. 23:1031C; *Davis v. Hoogacker*, 18-0921 (La. App. 1 Cir. 12/21/18), 2018 WL 6718507, *3. The issue of whether a borrowing employer/employee relationship exists is a matter of law for the court to determine. There are, however, several factual inquiries underlying borrowed employee status, and a district court's factual findings will not be upset unless they are manifestly erroneous. *Dustin v. DHCI Home Health Services, Inc.,* 95-1989 (La. App. 1 Cir. 5/10/96), 673 So.2d 356, 359. The inquiries include: (1) who has the right of control over the employee; (2) who selected the employee; (3) who pays the employee's wages; (4) who has the right to fire the employee; (5) who furnished the tools and the place to perform the work; (6) the length of employment; (7) which employer's work was being performed at the relevant time; (8) whether there was an agreement, either implicit or explicit, between the lending and borrowing employers; and (9) whether the employee acquiesced in the new work situation. *Mejia v. Boykin Bros., Inc.,* 10-0118 (La. App. 1 Cir. 9/10/10), 52 So.3d 82, 84. If, in light of the entire record, the district court's factual findings regarding borrowed employee status are reasonable, then the appellate court may not reverse. *See Fanguy v. Dupre Bros. Const. Co., Inc.,* 588 So.2d 1251, 1257 (La. App. 1 Cir. 1991).

The district court rejected the premise that the City was Mr. Vosburg's borrowing employer. Although the district court did not expressly state such a finding at or after trial, its money judgment against the City and in Mr. Vosburg's favor, as well as its earlier denial of the City's motion for summary judgment on the issue, clearly indicate its rejection of a borrowing employer/employee relationship. In its written reasons for denying the City's motion for summary judgment, the district court pertinently stated:

4

Vosburg was employed by the Parish of Pointe Coupee and was performing the task of changing lights in a bucket truck at tennis courts in New Roads. Vosburg was assisting a [C]ity employee in doing so. It was during this work that he injured his knee.

This Court finds that Vosburg was not an employee or borrowed employee of the [City] because the Parish maintained the right of control over him; Vosburg was being paid by the Parish; Pointe Coupee Parish maintained their right to hire and fire Vosburg; the Parish had the right to control when and where Vosburg was working as demonstrated by being instructed to help the [City] change the tennis court lights; and there existed no agreement relinquishing control as employer from the Parish to the City. The limited nature of the job performed at the tennis court does not amount to employment by the [City], even as a borrowed employee.

After reviewing the record in light of the relevant factual inquiries set forth above, we conclude the record contains a reasonable factual basis for the district court's determination that Mr. Vosburg was not the City's borrowed employee at the time of his September 25, 2015 accident. *See Fanguy,* 588 So.2d at 1257. Thus, finding no legal or manifest error, we conclude as a matter of law that Mr. Vosburg's tort suit against the City was not precluded by a borrowing employer/employee relationship.

In its writ application referred to this panel for decision, the City similarly argued that the district court erred in denying its motion for summary judgment on the borrowing employer/employee relationship. For the reasons given above, we deny the writ.[2]

## FUTURE LOST WAGES

The City next contends the district court erred in awarding Mr. Vosburg future lost wages of $372,401, contending there is no evidence that the Police Jury would have terminated Mr. Vosburg's employment at the end of his transitional period, if he were unable to return to full duty without restrictions.

---

[2] In its writ application, the City also challenged the district court's denial of it motion to set this matter for jury trial. We deny the writ on this issue, because both the City's motion for jury trial and its writ application were not timely filed. *See* La. R.S. 13:5105D and La. C.C.P. art. 1733C (setting forth delays within which a party must request a jury trial); also see La. C.C.P. art. 1914 and Uniform Rules – Courts of Appeal, Rule 4-3 (setting forth delays within which a party must file a writ application).

5

To obtain an award for future lost wages and/or loss of earning capacity, a plaintiff must present medical evidence indicating with reasonable certainty that he has a residual disability causally related to the accident. *Fontana v. Louisiana Sheriffs' Auto. Risk Program,* 96-1579 (La. App. 1 Cir. 6/20/97), 697 So.2d 1030, 1033. The plaintiff must also prove the amount of his lost wages, not with mathematical certainty, but by such proof as reasonably establishes the claim. *Shephard v. AIX Energy, Inc.,* 51,965 (La. App. 2 Cir. 5/23/18), 249 So.3d 194, 215, *writ denied,* 18-1266 (La. 11/5/18), 255 So.3d 1050. Awards for future lost income are intrinsically speculative, and as such, the trier of fact must exhibit sound discretion in rendering awards that are consistent with the record and do not impose a hardship on either party. *See* La. C.C. art. 2324.1; *Pennison v. Carrol,* 14-1098 (La. App. 1 Cir. 4/24/15), 167 So.3d 1065, 1082. Factors to be considered in determining a proper future lost wages award are the plaintiff's physical condition before and after the injury, the plaintiff's past work history and consistency thereof, the amount the plaintiff probably would have earned absent the injury complained of, and the probability that the plaintiff would have continued to earn wages over the remainder of his working life. *Id.*

There is no dispute that, due to his knee injury, Mr. Vosburg, 54 years old at the time of trial, will have a residual disability restricting him to light-duty employment during the 10.26 years of his remaining projected work-life. The record supports a finding that he has and will be able to continue with his air conditioning business, albeit with restrictions. According to Dr. Randy Rice, an expert economist who testified at trial and whose report is in the record, had Mr. Vosburg continued as the Police Jury Building Maintenance Supervisor full-time for 10.26 years, assuming a 2% increase per year, he would have earned $497,401 in that position. Reducing this amount by $125,200, the projected estimated amount Mr. Vosburg could earn in his air conditioning business, Dr. Rice concluded his lost future wages were $372,401.

Contrary to the City's argument on appeal, the fact that the Police Jury terminated Mr. Vosburg before the end of his transitional position is not relevant to the lost future wage calculation. No matter what employment he had after his knee injury,

6

whether with the Police Jury or otherwise, Mr. Vosburg is medically restricted to light-duty work for the remainder of his work-life expectancy. Thus, the City, the tortfeasor responsible for his lessened work ability, must compensate him for the difference between what he could have made if not injured and the lower amount resulting from that lessened work ability. Noting that an award of future lost income is inherently speculative, we conclude the district court did not abuse its discretion in awarding Mr. Vosburg $372,401 in future lost wages.

## ALLOCATION OF FAULT

Lastly, the City contends the district court committed legal error by failing to allocate some fault to Mr. Vosburg for his knee injury. Although the City's assignment of error frames the issue as the district court's failure to make specific findings as required by La. C.C.P. arts. 1917 and 1812C, the City's actual challenge is to the district court's failure to allocate any fault to Mr. Vosburg for his accident. The City points out that: Mr. Vosburg told Dr. Thad Broussard, one of his treating physicians, that he lost his balance when entering the truck's bucket; Kevin Smith, the City employee in the bucket with Mr. Vosburg, testified that Mr. Vosburg misjudged his landing when entering the bucket; and Dennis Howard, plaintiff's liability expert, admitted at trial that Mr. Vosburg's injury could partially be his fault, if due to his loss of balance.

In any action where a person suffers injury, the factfinder shall determine the degree of fault of all persons causing or contributing to the injury. *See* La. C.C. art. 2323A. If a person suffers injury partly because of his own negligence, his damages shall be reduced in proportion to his fault. *Id.* An appellate court owes great deference to a trier of fact's allocation of fault and reviews such under the manifest error-clearly wrong standard of review. *Schexnayder v. Bridges,* 15-0786 (La. App. 1 Cir. 2/26/16), 190 So.3d 764, 773. When two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous. *Id.*

In this case, the district court was presented with conflicting evidence as to the circumstances of Mr. Vosburg's accident, and we cannot say from our record review that the district court erred in allocating no fault to him. Perhaps the district court

discounted any evidence that Mr. Vosburg lost his balance; or, even if Mr. Vosburg did lose his balance, the district court was free, as the factfinder, to determine that such was not negligence. Considering the entire record, we find it reasonably supports the district court's conclusion that the City was 100% at fault and Mr. Vosburg was 0% at fault in causing the accident.

## CONCLUSION

For the above reasons, we affirm the May 23, 2019 judgment, and we deny the City's writ application. We assess costs of this appeal, $981, to the City of New Roads.

**AFFIRMED.**