SARTAIN, Judge.
Cynthia Cashio, a minor, was injured in an automobile accident which occurred on November 17, 1966 in Baton Rouge, Louisiana. This action was instituted by her mother, Mrs. Genevieve Cashio Cavalier, individually for special damages and as the natural tutrix of her minor daughter, for personal injuries sustained by the minor.
Suit was initially brought against Herbin P. Laurent and his liability insurer, State Farm Mutual Automobile Insurance Company. These defendants filed a general denial and alleged that the accident was caused solely through the negligence of Mary Bourne, the minor daughter of Belk-nap P. Bourne, Jr. Said defendants also filed a third-party petition against Mr. Bourne alleging, alternatively, that in the event Laurent was found guilty of negligence that the action of Miss Bourne also constituted negligence which contributed to the accident and for which third-party plaintiffs were entitled to receive judgment against third-party defendants for one-half of any judgment rendered against third-party plaintiffs.
The district judge held that the accident was the result of the concurrent negligence of Mr. Laurent and Miss Bourne. Accordingly, he granted judgment on the main demand in favor of plaintiff, individually, in the amount of $112.45 and as the tutrix of her minor child, in the amount of $7,500.-00. The trial judge also granted judgment in favor of the original defendants, third-party plaintiffs, and against Mr. Bourne, third-party defendant for one-half of the principle, interest and costs of the judgment rendered in favor of the plaintiff.
This appeal has been taken by Mr. Bourne, third-party defendant, against that portion of the judgment rendered against him in favor of third-party plaintiffs. He complains that the trial judge erred in holding that his daughter was guilty of negligence which contributed to the accident; and, alternatively, that the award of $7,500.00 is excessive.
Third-party plaintiffs (appellees here) have conceded negligence on the part of Mr. Laurent by not appealing or answering the appeal and further contend that the amount of damages awarded for the injuries suffered by Miss Cashio was within the discretion allowed to a trier of fact. For reasons hereinafter stated we are in accord with these views of appellees and are of the opinion that the decision of the trial judge should be affirmed.
*24 The accident giving rise to this litigation occurred at approximately 10:30 P.M. o’clock at a “T” intersection formed by Plank Road, a four lane street running in a generally north-south direction, and Linden Street, a two lane street running in a generally east-west direction which terminates on its western end at Plank Road.
This intersection is controlled by a traffic light. Right turns only are permitted for traffic traveling west on Linden Street. The traffic light operates as follows : When the light governing westbound traffic on Linden Street is green, the light governing southbound traffic on Plank Road shows a green arrow indicating that southbound traffic is permitted to make a left turn onto Linden Street, and the light governing northbound traffic on Plank Road is red. When the light governing westbound traffic on Linden Street 'is red, the lights governing both northbound and southbound traffic on Plank Road is green. There is no necessity for a green arrow light to control Linden Street because only right turns are permitted from Linden Street onto Plank Road.
Mr. Laurent testified that he was traveling in a southern direction at twenty to twenty-five miles per hour on the inside lane of Plank Road and that as he approached its intersection with Linden Street, he was faced with a green arrow permitting a left turn. He stated that after he had commenced his turn he observed the Bourne vehicle start to move forward. In an effort to avoid a collision, he accelerated his vehicle but was nevertheless struck on the right rear fender by the Bourne vehicle.
Miss Cashio stated that she was a guest passenger in a Volkswagen automobile owned by Mr. Bourne and driven at the time by his daughter, Mary Bourne. Miss Cashio stated that she was seated in the right front seat. They approached the intersection, traveling in a northerly direction, on the outside lane of Plank Road and stopped for the red light. She stated that there was another vehicle in the inside lane which was also waiting for the light to change. She explained that when the light turned green “Mary moved forward; and the next thing I knew a car was in front of us and we just went ahead on into the back of his car”. She admitted that she did not see the Laurent vehicle as it was making its turn or until it was right in front of her.
Pamela Marshall was also a guest passenger in the Bourne vehicle. She was sitting in the rear seat. She confirmed that their vehicle was in the outside lane of Plank Road and had stopped at the intersection for the red light. She stated that as the light turned green the vehicle on their left moved on ahead while Mary Bourne was manually shifting the gears of her vehicle into first, “and we took off and as we took off this car turned in front of us and we hit the car”. Miss Marshall was of the opinion that the vehicle next to them had cleared the intersection before Laurent made his turn and before Mary Bourne was able to move forward. This, of course, would have the Laurent vehicle cutting between the two northbound vehicles who were waiting for the same red light.
A Mr. Joseph H. Ropollo was traveling west on Linden Street and had stopped for the red light. However, Mr. Ropollo could remember no details of the accident and his testimony throws absolutely no light whatsoever on the events leading to the collision.
Mr. Laurent definitely denied that he cut between the two northbound vehicles. Miss Cashio had no independent recollection on this point. Apparently, the trial judge determined that the Laurent vehicle did not cut between the two northbound vehicles after the light changed because he held both Laurent and Miss Bourne guilty of negligence. Our evaluation of the testimony of the witnesses and examination of the record brings us to the same conclusion. as reached by the trial judge.
Under these circumstances granting the negligence of Mr. Laurent, Miss *25 Bourne was at fault when she proceeded to cross the intersection after the traffic light turned to green in the face of the turning Laurent vehicle.
It is well settled that the driver of a vehicle who has stopped for a red light will be held to be at fault if he starts forward immediately when the light turns to green and collides with a car that is still within the intersection even though the other car has not timely cleared the intersection. The rule requires that the starting vehicle do so only after it has made sure that it can safely cross the intersection. See McDaniel v. Grain Dealers Mutual Ins. Co., La.App., 182 So.2d 561; State Farm Mutual Automobile Ins. Co. v. Niagara Fire Ins. Co., La.App., 183 So.2d 145; Vico Ins. Co. v. New Orleans Public Service, Inc., La.App., 177 So.2d 425; Earles v. Volentine, La.App., 191 So.2d 740, and Jones v. State Farm Mutual Automobile Ins. Co., La.App., 209 So.2d 525.
The latest case on this point is Bettis v. Paulsen-Webber Cordage Corp., La.App., 217 So.2d 662 wherein it was stated:
“Our settled jurisprudence is that where traffic is controlled by an electric semaphore light, although a motorist generally may rely on the assumption that others will obey the traffic signals, he is guilty of negligence if he proceeds into an intersection immediately after a red light turns to green without allowing a reasonably sufficient time for vehicles in the intersection to clear the intersection, even if such vehicles are in the intersection in violation of the traffic light.” (Citations omitted)
We now turn our attention to the injuries sustained by Miss Cashio. The impact of the accident threw her against the dash board of the Bourne vehicle which bruised both of her knees. The initial injury to her right knee was superficial and cleared up in due time. However, the injury to her left knee proved to be serious and with residual effects.
She was initially seen by her family physician, a general practitioner, who later referred her to Dr. Jack F. Louque, an orthopedic specialist. Dr. Louque examined and treated Miss Cashio from December 14, 1966 through and including the date of the trial, September 5, 1968. Throughout most of this period of time she complained of pain and suffering in the medial side of her left knee around the kneecap. Initially the knee evidenced some swelling and liquid within the joint itself. It was Dr. Louque’s diagnosis that Miss Cashio sustained minute fractures of the back side of the cartilage, leading to a degeneration of the cartilage itself, a condition referred to as chondromalacia. He was of the opinion that her condition would worsen in time and would possibly require corrective surgery. At the time of the trial he did not recommend surgery for the reason that he was still hopeful that because of Miss Cashio’s youth, she would outgrow the injury. He estimated, as of the date of the trial, the residual disability to her leg to be 15%. He also stated that the chances would be 60% in favor of the condition worsening and that the only relief would then be surgery. It is particularly noted that on the date of his last examination the doctor observed definite objective findings in that when the knee was moved in a certain manner the “grating” would be detected.
Under these circumstances we do not feel that the award of $7,500.00 by the trial judge was an abuse of his discretion.
Accordingly, for the above and foregoing reasons the judgment of the district court is affirmed at appellant’s, third party defendant, costs.
Affirmed.