HIGGINBOTHAM, J.
IsThis consolidated matter concerns personal injuries and damages that followed an intersectional collision between a ear and a piekup truck. The driver of the car was found to have been 100% at fault for the accident and her guest passenger was awarded damages. That driver and her liability insurer appeal. The guest passenger answered the appeal. We consider whether the trial court erred in assessing fault and whether the damage award to the guest passenger was abusively high.
*846 FACTS
The accident occurred at approximately 7:00 p.m. on June 26, 2012, in Morgan City, Louisiana. It is undisputed that, due to a nearby power plant explosion, the electrical power was not operating throughout the city. As a result, the four-way traffic signal was not functioning at the intersection of Louisiana Highway 182 (Hwy 182) and Martin Luther King Boulevard (MLK). Hwy 182 is a four-lane highway that runs east and west and intex-sects with MLK, which runs north and south. Both roadways have left-turn lanes for traffic traveling east and west on Hwy 182 and southbound on MLK.
Catherine L. Celestine was driving her car westbound on Hwy 182 at the same time that Bruce Andrew Pennison was driving his parent’s pickup truck southbound on MLK. Ms. Celestine planned to continue west on Hwy 182 and Mr. Penni-son intended to turn left onto Hwy 182. As they approached the intersection, both drivers noticed that the traffic signal was not functioning, but neither driver saw the other until just before the collision midway through the intersection.
Ms. Celestine and her guest passenger/cousin, Lester B. Pinn, claimed that they were conversing with each other when Ms. Celestine stopped at the intersection and, after observing no other cars, she proceeded into the intersection. Mr. Pinn yelled for her to “watch it!” just before Ms. Celestine collided with Mr. Pennison’s Lpickup truck midway through the intersection. Ms. Celestine denied that there were any other vehicles stopped with her at the intersection. She was confused as to which lane she was in, but Mr. Pinn and several witnesses testified that Ms. Celestine’s car was in either the left-turn or left lane and there were other cars in the right lane on Hwy 182. An independent witness, Aubrey Dean Boudreaux, who was standing outside of his corner business watching traffic at the intersection when the collision occurred, observed Ms. Celes-tine’s car stop at the intersection and when her car took off, Ms. Celestine “hit the back end of the truck” as it came across the intersection. Mr. Boudreaux did not see Mr. Pennison’s pickup truck until the time of the impact, so he could not say whether Mr. Pennison had or had not stopped at the intersection.
Mr. Pennison and his two guest passengers, his cousin, Jacob Paul Pennison, and his friend, Brigg Norris, maintained that Mr. Pennison stopped at the intersection and waited for several cars to pass through the intersection, which he was treating as a four-way stop. As Mr. Penni-son drove through the intersection near the middle of Hwy 182, he and his passengers saw Ms. Celestine’s car coming toward his truck. Mr. Pennison increased his speed in an attempt to avoid a collision, but Ms. Celestine’s car hit the rear driver’s side panel of his pickup tnxck, causing his truck to spin around and end up in a parking lot on the south side of Hwy 182.
As a result of the collision, two separate lawsuits were filed. Mr. Pinn brought suit in St. Mary Parish against Mr. Pennison and his insurer, Louisiana Farm Bureau Insurance Company (Farm Bureau), and Ms. Celestine and her insurer, State Farm Mutual Automobile Insurance Company (State Farm), for injuries he received in the accident. Ms. Celestine filed suit in East Baton Rouge Parish against Mr. Pen-nison and Farm Bureau for injuries she received in the accident. Farm Bureau reconvened against Ms. Celestine and State Farm, for payments it made as a result of the accident. Ms. Celestine’s suit was eventually transferred to St. Mary Parish and then consolidated with Mr. Pinn’s lawsuit since both cases arose out of the same accident.
A bench trial on the merits was held on June 22, 2015. The trial court *847 issued extensive written reasons following the trial, outlining the details of each witness’s testimony and specifically noting that the case was “almost entirely one based on the credibility of the witnesses.” The trial court concluded that Ms. Celes-tine was 100% at fault in causing the accident for failing to yield to the traffic approaching from her right at the intersection that had reverted to an all-way stop due to the non-functioning traffic signal. In a judgment signed on July 15, 2015, the trial court awarded Mr. Pinn special damages in the amount of $6,814.52 and general damages in the amount of $15,000.00. No damage award was made to Ms. Celestine. Ms. Celestine and State Farm appealed, urging that the trial court’s apportionment of 100% fault to Ms. Celestine was manifestly erroneous, and that the damages awarded to Mr. Pinn were excessively high. Mr. Pinn answered the appeal, maintaining that the trial court should have found Mr. Penni-son at least 95% at fault and seeking an increase in the amount of general damages awarded to him. Ms. Celestine did not individually file her own appeal, nor did she answer the appeal, concerning the lack of a damage award to her.[1]
ALLOCATION OF FAULT
Both Mr. Pinn and Ms. Celestine, along with State Farm, suggest that the trial court manifestly erred in allocating Ms. Celestine 100% of the fault for causing the accident. They assert that the trial court ignored evidence that Ms. Celestine had | ^stopped before entering the intersection and that Mr. Pennison had not stopped. They also assert that the trial court incorrectly found that Mr. Pennison had the right-of-way at the intersection and that he had entered the intersection before Ms. Celestine.
It is well settled that the allocation of fault is a factual matter within the sound discretion of the fact finder, and appellate courts review apportionment of fault under the manifest error-clearly wrong standard of review. Schexnayder v. Bridges, 2015-0786 (La.App. 1 Cir. 2/26/16), 190 So.3d 764, 773. The manifest error standard demands great deference to the fact finder’s conclusions; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Id. Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous. Id.; Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989).
The trial court made credibility determinations and expressly found in written reasons:
*848 Clearly, [Ms. Celestine] was in either the left (inside) lane of [Hwy 182] or the left turn lane of [Hwy 182] where her view of traffic to her right may have been obscured. The Court finds that, as she testified, she was talking with a passenger, stopped for traffic, then proceeded without observing traffic which had already entered the intersection from her right. Whatever her speed, upon impact was sufficient to disable [Mr. Pennison’s] truck, cause significant damage, and causing it to spin into an area parking lot. The impact was therefore not light and was not a “fender bender.” [Ms. Celestine] either failed to stop at the intersection or, after stopping, failed to observe traffic which had already preempted the intersection, causing the accident.
Our only inquiry at this stage is whether the trial court’s factual findings were reasonable, regardless as to how we may have weighed the evidence sitting as the trier of fact. Schexnayder, 190 So.3d at 774.
Our review reveals conflicting evidence as to whether both drivers stopped. Both claim that they stopped and both claim that the other driver did not stop before proceeding into the intersection. Because the traffic signal lights were not | functioning, the intersection was governed as if it were an all-way stop. See La. R.S. 32:232.1(A) (“when a traffic control signal is not functioning at an intersection, and the signal lights are completely dark, the intersection shall revert to an all-way stop and traffic shall proceed in accordance with the provisions of [La.] R.S. 32:121(A).”) Louisiana Revised Statute 32:121(A) provides that “[w]hen two vehicles approach or enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left, shall yield the right of way to the vehicle on the right.” Further, even though Mr. Pennison, as a left-turning motorist, had a general duty to yield the right of way at an intersection under La. R.S. 32:122, that duty is not as great as the duty that all motorists must exercise extreme caution upon approaching or entering an intersection where the traffic control signal is not functioning, and only proceeding after ascertaining that it is safe to do so. See Thompson v. Chevron U.S.A., Inc., 94-1107 (La.App. 1 Cir. 4/7/95), 653 So.2d 1351, 1355, writ denied, 95-1173 (La. 6/23/95), 656 So.2d 1019 (following the rationale of Soprano v. State Farm Mutual Automobile Insurance Company, 246 La. 524, 165 So.2d 308, 312 (1964)).
The evidence clearly reveals that Ms. Celestine was the vehicle on the left side of this all-way stop intersection. Additionally, the evidence shows that Ms. Cel-estine did not see Mr. Pennison’s vehicle until the moment just before impact. All witnesses, including Mr. Pinn, consistently indicated that Mr. Pennison’s pickup truck was midway through the intersection when it was hit in the back side panel by Ms. Celestine’s car. Even the independent witness, Mr. Boudreaux, testified that he saw Ms. Celestine’s car take off from a stop and hit Mr. Pennison’s pickup truck that was already coming across the intersection. Thus, the trial court’s conclusion that Mr. Pennison’s “vehicle occupied the intersection before the collision” occurred is reasonably supported by the evidence. Furthermore, Mr. Pennison and his passengers testified that Mr. Pennison stopped and waited for several vehicles to | ^proceed through the all-way stop intersection, and then accelerated in an attempt to avoid the collision when he saw Ms. Celestine’s car just prior to the impact. Conversely, Ms. Celestine did not see any other vehicles at the intersection, including Mr. Pennison’s pickup truck. Under the *849 law, Ms. Celestine is presumed to have seen what she should have seen. Gaudet v. Louisiana Department of Highways, 432 So.2d 867, 869 (La. App. 1st Cir. 1982). Therefore, Ms. Celestine breached the duty of extreme caution owed by her to other motorists entering the intersection when it apparently could not be safely traversed due to Mr. Pennison’s pickup truck passing through at that time.
Having thoroughly reviewed the conflicting testimony concerning the accident, and mindful of the great deference we must afford the trial court as fact finder, we cannot say that the trial court’s allocation of 100% fault to Ms. Celestine was manifestly erroneous or clearly wrong. Accordingly, we find no merit to the assignments of error concerning the assessment of fault in this case.
DAMAGES
Both Mr. Pinn and Ms. Celestine, along with State Farm, complain that the trial court abused its discretion in awarding damages to Mr. Pinn. Mr. Pinn maintains that the general damage award of $15,000.00 is abusively low for an aggravation of a pre-existing knee condition that was treated for approximately sixteen months. Conversely, Ms. Celestine and State Farm argue that $15,000.00 in general damages was abusively high and $6,810.52 in special damages was manifestly erroneous for what essentially amounted to a one-day treatment for a pre-existing knee condition. Mr. Pinn requests that this court increase his general damage award to $30,000.00, while Ms. Celestine and State Farm suggest that a more reasonable general damage award is $1,500.00 and that special damages for medical expenses on the day of the accident was only $1,817.96.
| nSpecial damages have a “ready market value,” that supposedly can be determined with relative certainty. See Wainwright v. Fontenot, 2000-0492 (La. 10/17/00), 774 So.2d 70, 74. Medical expenses are easily measured. Smith v. Escalon, 48,129 (La.App. 2 Cir. 6/26/13), 117 So.3d 576, 583. A plaintiff is required to prove special damages by a preponderance of the. evidence. See Mack v. Wiley, 2007-2344 (La.App. 1 Cir. 5/2/08), 991 So.2d 479, 489, writ denied, 2008-1181 (La. 9/19/08), 992 So.2d 932. The standard of review applicable to an award of special damages is the manifest error standard. Kaiser v. Hardin, 2006-2092 (La. 4/11/07), 953 So.2d 802, 810.
General damages are defined as “those which may not be fixed with pecuniary exactitude;” instead, they “involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms.” Duncan v. Kansas City Southern Railway Co., 2000-0066 (La. 10/30/00), 773 So.2d 670, 682. For that reason, general damage awards are reviewed under the “much discretion” standard. See La. C.C. art. 2324.1 (providing that “[i]n the assessment of damages in cases of offenses ... much discretion must be left to the judge or jury.”) See also Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Because the discretion vested in the trier of fact is so great, and even vast, an appellate court should rarely disturb a damage award on review. Guillory v. Lee, 2009-0075 (La. 6/26/09), 16 So.3d 1104, 1116.
At the trial, Mr. Pinn’s injury claim was established by his testimony, along with the testimony of his sister and mother and a friend. Additionally, Mr. Pinn’s medical records were introduced into evidence. The testimony and evidence show that Mr. Pinn suffered an aggravation of a pre *850 existing condition to his left knee in the accident. On the day of the accident, he was taken by ambulance from the |inaccident scene to Teche Regional Medical Center in Morgan City. Mr. Pinn testified at trial about bruises and scratches on his thighs and pain in both of his knees, and how his knee pain was different after the accident, as well as how his activities were altered due to his pain level. Mr. Pinn sporadically sought follow up treatment with his treating physician, Dr. Jeffery Fitter, for sixteen months after the accident. While some of the visits to Dr. Fitter were not specifically for knee pain, the medical records reflect that Mr. Pinn was treated for discomfort and an aggravation to a pre-existing arthritic knee condition until November 2013.
We find the evidence in the record regarding Mr. Pinn’s injuries and the pain he has suffered as a result of the accident sufficient to support the general and special damage awards. We further note that while we find the award of $15,000.00 to be generous and on the high end for the amount of damages that a reasonable trier of fact could award under these circumstances, we do not find it constitutes an obvious abuse of discretion. Consequently, we find no merit to the assignments of error regarding the amount of damages awarded to Mr. Pinn.
CONCLUSION
For the assigned reasons, the judgment of the trial court is affirmed in all respects. All costs of these consolidated appeals are equally assessed to Mr. Pinn and to Ms. Celestine and State Farm.
AFFIRMED.
Theriot, J. concurs.

. Ms. Celestine filed a separate appellee brief assigning error concerning her individual damages claim, but the record does not contain an individual appeal or answer to appeal on her behalf. Accordingly, we will not consider any alleged error concerning the lack of a damage award for Ms. Celestine's claimed injuries. See La. Code Civ. P. art. 2133(A) (an appellee who seeks to modify, revise or reverse a judgment in part, must file an answer to the appeal). See also Etcher v. Neumann, 2000-2282 (La.App. 1 Cir. 12/28/01), 806 So.2d 826, 841, n.3, writ denied, 2002-0905 (La. 5/31/02), 817 So.2d 105 (an appellate court is precluded from considering whether damages awarded are abusively low and should be increased where plaintiffs did not file an answer to the appeal or a cross-appeal); Hospital Corp. of America v. Robinson, 499 So.2d 246, 249 (La. App. 1st Cir. 1986) (“[fjailure to appeal or answer an appeal precludes this court’s consideration of any issues subsequently asserted in brief’); TTV, L.L.C. v. Simmons, 2010-1163 (La.App. 3 Cir. 3/9/11), 58 So.3d 684, 692, n.6, writ denied, 2011-1048 (La. 6/24/11), 64 So.3d 222 (filing a brief does not satisfy the statutory requirements for filing an answer to an appeal).