# STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2019 CA 0551

### ISAIAH GAINES AND ALVIN GAINES

### VERSUS

### PAUL LEMOINE, ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY AND MISSISSIPPI FARM BUREAU CASUALTY INSURANCE COMPANY

Judgment Rendered:     FEB 2 1 2020

\* \* \* \* \* \*

On Appeal from the Twentieth Judicial District Court
In and for the Parish of West Feliciana
State of Louisiana
Docket No. 22514

Honorable Kathryn E. Jones, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| Chad A. Aguillard<br>New Roads, Louisiana<br>Willie G. Johnson, Jr.<br>Baton Rouge, Louisiana | Counsel for Plaintiffs/Appellants,<br>Isaiah Gaines and Alvin Gaines |
| Christopher W. Stidham<br>Carey M. Nichols<br>Baton Rouge, Louisiana | Counsel for Defendants/Appellees,<br>AllState Property and Casualty Insurance<br>Company and Paul Lemoine |

\* \* \* \* \* \*

BEFORE:  WHIPPLE, C.J., GUIDRY, AND BURRIS,[1] JJ.

---

[1]   Judge William J. Burris, retired, serving *pro tempore* by special appointment of the Louisiana Supreme Court.

Guidry, J. Concurs.

**BURRIS, J.**

In this personal injury case, the plaintiffs, Isaiah Gaines and Alvin Gaines, appeal the trial court's judgment finding Alvin Gaines solely at fault for causing the subject car accident and dismissing the plaintiffs' suit with prejudice For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

On October 1, 2014, Alvin and his passenger, Isaiah, were involved in an accident with Paul Lemoine at the intersection of Louisiana Highway 10 and Highway 61 in West Feliciana Parish. Alvin and Paul were both driving pickup trucks, and Paul was pulling a five-by-ten trailer with a 150-pound load.

Immediately before the accident, Alvin was stopped at the red traffic light on Highway 61 south at its intersection with Highway 10. Paul was stopped in the turning lane on Highway 61 north, waiting for the turn signal to change to green so that he could turn left onto Highway 10. Alvin and Paul both contend that they proceeded through the intersection only after their respective traffic signal turned green. Alvin and Isaiah subsequently filed this suit against Paul and his insurer, Allstate Property and Casualty Insurance Company, seeking damages for injuries allegedly sustained in the accident.[2]

A bench trial was held on October 10, 2017 to determine liability, medical causation, and damages. After taking the matter under advisement, the trial court issued written reasons for judgment on October 31, 2017. The trial court concluded that "it is more probable than not that the plaintiff ran the red light" and, consequently, ruled in favor of the defendants and against the plaintiffs, finding Alvin solely at fault for causing the accident.

The plaintiffs' original appeal to this court was dismissed on December 21, 2018 for lack of appellate jurisdiction. **Gaines v. Lemoine**, 2018-0490 (La. App.

---

[2]    Alvin's UM carrier, Mississippi Farm Bureau Casualty Insurance Company, was also a named as a defendant. The plaintiffs' claims against Mississippi Farm Bureau were subsequently settled, and Mississippi Farm Bureau was dismissed by an order signed on November 29, 2017.

2

1st Cir. 12/21/18) 2018 WL 6722352 (unpublished). Following remand, a final judgment was signed on February 21, 2019, dismissing the plaintiffs' suit with prejudice. From this judgment, the plaintiffs instituted the subject appeal.

## ASSIGNMENTS OF ERROR

The plaintiffs assert that the trial court erred in finding that Alvin ran a red light and in assigning him with 100% fault for causing the accident. The plaintiffs further assert that the trial court erred by finding that Paul, who was making a left turn across the plaintiffs' lane of travel, was not at fault for causing the accident. Although not specifically assigned as error, the plaintiffs assert that "in the very least," the trial court erred by failing to apply a comparative fault analysis.

## APPLICABLE LAW

### *Standard of Review*

When reviewing factual findings made by the trier of fact, including the allocation of fault, this court is required to apply the manifest error standard of review. See **Stobart v. State, Department of Transportation and Development,** 617 So.2d 880, 882 (La. 1993). See also **Pinn v. Pennison**, 2016-0614 (La. App. 1st Cir. 12/22/18), 209 So.3d 844, 847, citing **Schexnayder v. Bridges**, 2015-0786 (La. App. 1st Cir. 2/26/16), 190 So.3d 764, 773. Under the manifest error standard, which demands that great deference be given to the trial court's factual findings, the issue to be resolved on appeal is not whether the trial court was right or wrong, but whether its conclusions are reasonable. **Adams v. Rhodia, Inc.**, 2007-2110 (La. 5/21/08), 983 So.2d 798, 806, citing **Stobart**, 617 So.2d at 882; **Pinn**, 209 So.3d at 848, citing **Schexnayder**, 190 So.3d at 774. If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that, had it been sitting as the trier of fact, it would have

3

weighed the evidence differently. **Adams**, 983 So.2d at 806, citing **Stobart**, 617 So.2d at 882-3.

This is especially true when the trial court's factual findings are based on witness credibility; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. **Pinn,** 209 So.3d at 847, citing **Schexnayder**, 190 So.3d at 773. Thus, a factfinder's conclusions, based on its decision to credit the testimony of one of two or more witnesses, can virtually never be manifestly erroneous. **Adams,** 983 So.2d at 807, citing **Rosell v. ESCO,** 549 So.2d 840, 845 (La. 1989). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous. **Pinn**, 209 So.3d at 847, citing **Schexnayder**, 190 So.3d at 773. See also **Jones v. Bravata**, 2018-0837 (La. App. 1st Cir. 5/9/19), 280 So.3d 226, 233. Further, in reaching its conclusions, the trier of fact need not accept all of the testimony of any witness as being true or false and may believe and accept a part or parts of a witness's testimony and refuse to accept other parts. **Pontchartrain Natural Gas System v. Texas Brine Co., LLC**, 2018-0631 (La. App. 1st Cir. 7/3/19), 281 So.3d 1, 9, writ denied, 2019-01423 (La. 11/12/19), citing **Holmes v. Southeastern Fidelity Ins. Co**., 422 So.2d 1200, 1203-04 (La. App. 1st Cir. 1982), writ denied, 429 So.2d 133 (La. 1983).

These rules apply equally to the evaluation of expert testimony. **Adams,** 983 So.2d at 807, citing **Lasyone v. Kansas City Southern Railroad,** 2000-2628 (La. 4/3/01), 786 So.2d 682, 693. The opinions of expert witnesses are not binding on the trial court and are to be weighed the same as any other evidence. **Pontchartrain Natural Gas System**, 281 So.3d at 9 citing **Holmes**, 422 So.2d at 1204.

4

### Left-Turning Motorist

It is undisputed that Paul was making a left turn when the accident occurred. A left turn is a dangerous maneuver, and a driver has a duty not to attempt the turn until he ascertains it can be completed safely. **Pourciau v. Melville**, 2018-0385 (La. App. 1st Cir. 9/21/18) 2018 WL 4520283, *2 (unpublished). Louisiana Revised Statute 32:122 provides:

> The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard.

Further, vehicular traffic facing a green arrow signal may cautiously enter the intersection to make the movement indicated by such arrow, but shall stop and yield the right-of-way to other traffic lawfully using the intersection. La. R.S. 32:232(1)(b). Once it has been established that a motorist was attempting to make a left turn when an accident occurred, the burden of proof shifts to the left-turning motorist to absolve himself of liability. **Pourciau**, 2018 WL 4520283 at *2. This burden remains despite the existence of a left-turn signal at the intersection in question, but the burden may be discharged by proof that the green arrow signal was illuminated. **Id.**, citing **Hampton v. Marino**, 97-1345 (La. App. 1st Cir. 11/6/98), 725 So.2d 503, 509. Nevertheless, a left-turning motorist is required to exercise a very high degree of care, even where the motorist executes his turn on the authority of an illuminated left-turn signal. **Pourciau**, 2018 WL 4520283 at *2, citing **Tipton v. Menard**, 467 So.2d 126, 128 (La. App. 3rd Cir. 1985).

### Traffic Control Signals

Alvin's lane of travel was controlled by a circular traffic signal, which he maintains was green when he proceeded through the intersection. Louisiana Revised Statute 32:232 relevantly provides that vehicular traffic facing a circular green signal may proceed straight through, but shall stop and yield the right-of-

way to other vehicles lawfully within the intersection at the time such signal is exhibited. La. R.S. 32:232(1)(a). A motorist approaching an intersection who is favored with a green light cannot depend exclusively on a favorable light, but has a duty to watch for vehicles already in the intersection when the light changed; however, this duty does not extend to looking for approaching traffic that has not yet entered the intersection. **Pourciau**, 2018 WL 4520283 at *2, citing **Hampton**, 725 So.2d at 509.

## ANALYSIS

Paul testified that he stopped at the red light in the left turn lane on Highway 61 north and waited for the turn signal to change to green. Paul confirmed that the arrow was "definitely green" when he proceeded "very slowly" and began to turn left, heading toward Highway 10. According to Paul, his truck was "broadsided" by the plaintiffs as he crossed Highway 61. He denied seeing Alvin's truck approaching on Highway 61 south and believes Alvin ran the red light.

Both Isaiah and Alvin testified that Alvin stopped at the red light at the intersection of Highway 61 south and Highway 10, intending to continue straight to Baton Rouge. According to the plaintiffs, Alvin proceeded through the intersection when the light turned green. As he did, the front driver's side of Alvin's truck collided with the front of Paul's truck. Alvin denied seeing Paul enter the intersection and testified that, in his opinion, Paul ran the red light.

Finally, the trial court heard testimony from Edward K. Carrick, P.E., the plaintiffs' expert in accident reconstruction. Mr. Carrick explained that, if Paul's testimony is accepted, it is more probable than not that he began to make the left turn after the traffic light (arrow) turned green, but he failed to clear the intersection with his truck and trailer before Alvin's traffic signal turned green. Conversely, Mr. Carrick stated that if Paul's testimony is disregarded, then a "very, very similar incident would have occurred" if Paul "rolled up" to the

6

intersection and tried to "get through the light" without coming to a complete stop. In this hypothetical, proposed only by Mr. Carrick, Paul was "coasting through" the intersection in an attempt to "beat a red signal."

The trial court clearly accepted Paul's testimony and, therefore, considered the plaintiffs' theory that Paul turned on a green arrow but failed to timely clear the intersection. In its written reasons for judgment, the trial court identified the plaintiffs' theory of the case as follows:

> The plaintiffs' theory of the case is that the defendant proceeded through the intersection at such a slow speed or with such delay that his green turn signal turned yellow while he was still in the intersection and the plaintiffs' [sic] had a green light.

On appeal, the plaintiffs do not assert that the trial court was incorrect in this regard. Instead, they disagree with the trial court's interpretation of the evidence and conclusions drawn therefrom. Although the plaintiffs correctly argue that no evidence affirmatively establishes that Alvin disregarded a red traffic signal, a finding that Paul had a green light necessarily means Alvin did not. As Mr. Carrick explained, the lights at this intersection are actuated and sequence "back and forth," meaning that, since Paul and Alvin were the only two vehicles at this intersection, when one had a green light, the other had a red light.

As the trial court noted, the photographs admitted into evidence show that Alvin's truck collided with the front passenger side of Paul's truck. Paul confirmed the damage to his truck was isolated to the front passenger side, near the headlight, fender, and tire. Based on its interpretation of the objective photographic evidence, as well as witness testimony, the trial court concluded:

> If the defendant had been traveling so slowly through the intersection that the light turned yellow, the plaintiffs' vehicle would have struck the rear portion of the defendant's vehicle, or the trailer; not the front fender if the plaintiff in fact had a green light.

The trial court also considered Mr. Carrick's testimony that if Paul was turning left slowly at five miles per hour, as he testified, it would have taken him

7

approximately fourteen seconds to clear the intersection. Mr. Carrick further explained that the traffic signal inventory report, which was admitted into evidence, establishes that the arrow governing Paul's lane was green for six seconds and yellow for five seconds. There was also a "red clearance" of 1.8 seconds, when all lights at the intersection were red. Thus, according to this light sequence, Paul had 12.8 seconds to clear the intersection before Alvin's light turned green.

Paul testified that he slowly began to accelerate as soon as the red arrow changed to green. Mr. Carrick explained that, if Paul waited two seconds to accelerate after the arrow changed to green, as is expected based on human perception and reaction time, he would have arrived at the point of impact within 8.4 seconds, while his light was still yellow. Conversely, then, Alvin's light would have been red. Alvin confirmed that Paul's truck did not clear the intersection, and trial testimony established that, after impact, both trucks remained in the travel lanes of Highway 61 south. Considering this, the trial court concluded:

> ...Even if the turn signal changed to yellow while the defendant was in the intersection, the five-second yellow turn signal plus the 1.8 seconds of red clearance would have given the defendant enough time to travel further through the intersection than the location where the collision occurred.
>
> The undisputed fact that the collision occurred in the southbound travel lanes of US Highway 61 plus the fact that the point of impact was the front fender of the defendant's truck clearly establishes that if the defendant's light turned yellow while he was in the process of turning, as was asserted by the plaintiffs, then it is more probable than not that the plaintiff ran the red light.

After examining the record in its entirety, we cannot say that the trial court's factual findings were manifestly erroneous. As Mr. Carrick recognized, the testimony provided by Paul and Alvin "just don't match, so we're not sure exactly --." He acknowledged that the physical evidence would be the same regardless of which driver ran the red light. Mr. Carrick admittedly made inferences and weighed evidence to arrive at a conclusion that it is more likely

8

than not that Paul ran a red light. Similarly, the trial court was required to weigh evidence and assess witness credibility and was not bound to accept all of Mr. Carrick's testimony, particularly his opinion concerning liability. The trier of fact chose one of two permissible views of the evidence – a choice that cannot be manifestly erroneous.[3] See **Pinn**, 209 So.3d at 847, citing **Rosell**, 549 So.2d at 844.

We also reject the plaintiffs' assertion that the trial court failed to apply the law concerning left-turning motorists and comparative fault. The trial court accepted Paul's testimony – and the plaintiffs' theory of the case – that Paul had a green light when he entered the intersection to make a left turn, thus, discharging Paul's burden of proving that the green arrow signal was illuminated. See **Pourciau**, 2018 WL 4520283 at *2, citing **Hampton**, 725 So.2d at 509. Paul's uncontradicted testimony also established that he exercised caution as he began making the turn and advanced slowly when the arrow turned green. Paul explained that he took a "sweeping look" through the intersection, observed no traffic approaching from Highway 61 south, then shifted his focus to the path in front of him as he approached Highway 10. We cannot say the trial court erred in finding that Paul acted reasonably and with the requisite degree of care. See **Pourciau**, 2018 WL 4520283 at *2, citing **Tipton**, 467 So.2d at 128.

Finally, the trial court's judgment must be affirmed, even if this court were to accept the plaintiffs' theory that Paul's arrow was green when he began to turn, but he failed to clear the intersection before Alvin's light turned green. It is well settled that the driver of a vehicle who has stopped for a red light will be held to be at fault if he starts forward immediately when the light turns to green and collides with a car that has not timely cleared the intersection. See La. R.S. 32:232(1)(a); **Cavalier v. State Farm Ins. Co.**, 224 So.2d 22, 25 (La. App 1st

---

[3] The plaintiffs assert that the trial court abused its discretion in finding that Alvin ran a red light; however, as noted, manifest error is the appropriate standard of review of the trial court's factual determination.

Cir. 1969). A motorist must not enter an intersection after a red light turns to green until sufficient time is allowed for cross traffic, already in the intersection, to clear. **Earles v. Volentine**, 191 So.2d 740, 743 (La. App. 2d Cir.), <u>writ refused</u>, 250 La. 21, 193 So.2d 529 (1967). <u>See also</u> **Pourciau**, 2018 WL 4520283 at *2, <u>citing</u> **Hampton**, 725 So.2d at 509. Therefore, we find no merit in the plaintiffs' arguments.

## CONCLUSION

For the foregoing reasons, the trial court's February 21, 2019 judgment is affirmed. All costs of this appeal are assessed to the plaintiffs/appellants, Isaiah Gaines and Alvin Gaines.

**AFFIRMED.**